376 So.2d 362 (1979)
John Sidney ARCENEAUX et al., Plaintiffs-Appellants,
v.
J. Hus HAWKINS, Defendant-Appellee.
No. 7160.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
*363 Zaunbrecher & Foreman, Christopher L. Zaunbrecher, Rayne, for plaintiffs-appellants.
William Hugh Mouton, Lafayette, for defendant-appellee.
Before WATSON, CUTRER and DOUCET, JJ.
CUTRER, Judge.
The plaintiffs-lessors, John Sidney Arceneaux, Janet Arceneaux LeBlanc, John D. Arceneaux, David Lee Arceneaux, John Ray Arceneaux and Clara Jo Arceneaux Boulet, brought suit for the dissolution of a mineral lease, damages and attorney's fees against J. Hus Hawkins, defendant-lessee. The lessors appeal from judgment of the trial court sustaining lessee's dilatory exception of prematurity and dismissing the suit. We reverse.
The record reflects that the plaintiffs are owners of certain mineral interests in Acadia Parish. They entered into an oil, gas and mineral lease with defendant-lessee, J. Hus Hawkins, effective September 22, 1976. Under the terms of the lease, the lessee was to pay one-sixth of production as royalty. Production from a gas well drilled on the leased property was obtained in paying quantities in July of 1976. Certain quantities of this production were allocated to mineral interests owned by lessors under J. Sidney Lyons Voluntary Unit A.
*364 In the ensuing period, lessee made no royalty payments to lessors. On February 17, 1978, lessors gave written notice of nonpayment to lessee as required by the Louisiana Mineral Code. On February 21, 1978, lessee responded with written reasons for nonpayment of royalties. In these reasons for nonpayment, the lessee's attorney explained that the ownership interests in the tracts of land involved in the lease were complex and that he was still in the process of determining the interests of the lessors in the property. He stated that the lessee did not consider the failure to pay unreasonable in light of these circumstances.
On April 25, 1978, lessee tendered payment of the royalties due. This tender was refused by the lessors and suit was filed on July 12, 1978. The lessee filed dilatory exceptions or prematurity and want of amicable demand. The trial court sustained the exception of prematurity. The minute entry reflects that the trial court found that the response made to the lessors' notice of nonpayment, within the 30 day period provided by Mineral Code Art. 138, defeated the right to sue for dissolution and/or damages. The lessors have appealed.
The issue presented on appeal is whether the trial court erred in sustaining lessee's exception of prematurity on the ground that lessee's letter of explanation within 30 days of the notice of nonpayment, and tender of royalty payments after the 30 day period, defeats plaintiffs' right to sue for dissolution, damages and attorney's fees.
Prior the adoption of the Mineral Code, which became effective January 1, 1975, a jurisprudential rule had developed wherein cancellation of a mineral lease was ordered where there was an unjustified delay in the making of royalty payments by the lessee. The demand for cancellation could be made without the lessor having put the lessee in default. The jurisprudence was based on the theory that an unjustified delay in making royalty payments was an active breach of the mineral lease, thus removing the default requirements. Fawvor v. U. S. Oil of Louisiana, Inc., 162 So.2d 602 (La.App. 3rd Cir. 1964); Sellers v. Continental Oil Company, 168 So.2d 435 (La.App. 3rd Cir. 1964); Pierce v. Atlantic Refining Company, 140 So.2d 19 (La.App. 3rd Cir. 1962). This rule was tempered in some cases, however, and cancellation of the lease was denied where justifiable reasons for the delay were shown. Hibbert v. Mudd, 294 So.2d 518 (La.1974); Wilson v. Sun Oil Company, 290 So.2d 844 (La.1974); and Broadhead v. Pan American Petroleum Corporation, 166 So.2d 329 (La.App. 3rd Cir. 1964), writs den., 167 So.2d 679 (La.1964).[1]
The adoption of the Mineral Code, Articles 137-141, made a significant change in this area of the law.
Article 137 reads as follows:
"§ 137. Nonpayment of royalties; notice prerequisite to judicial demand.
"If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease."
Under Art. 137, the mineral lessor must give the lessee a 30 day written notice of the lessee's failure to make timely or proper payment of royalties. Such notice is an indispensable prerequisite to a judicial demand for dissolution of the lease or damages. The effect of the article is to overrule the "active breach" cases heretofore cited, by requiring the 30 day notice of nonpayment to the lessee before he can be exposed to possible cancellation. This 30 day notice requirement affords the lessee an opportunity to evaluate the nonpayment problem and to make an informed decision as to whether the accrued royalties should be paid. After the notice is received by the lessee, Art. 138 sets forth the procedure to be followed by the lessee.
Article 138 provides as follows:
"§ 138. Required response of lessee to notice.
"The lessee shall have thirty days after receipt of the required notice within *365 which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the royalties or stating or failing to state a reasonable cause for nonpayment within this period has the following effect on the remedies of dissolution and damages." (Emphasis added)
Under this article the lessee must pay the royalties due within 30 days or he must respond in writing, stating a reasonable cause for nonpayment. If the lessee chooses to pay within the 30 day period, Art. 139 sets forth the effect of such payment.
Article 139 provides as follows:
"§ 139. Effect of payment in response to notice.
"If the lessee pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the original failure to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on the royalties computed from the date due, and a reasonable attorney's fee if such interest is not paid within thirty days of written demand therefor."
Under this article, if payment is made within 30 days, the court is given the discretion of awarding damages, interest and attorney's fees where it is proven that the lessee was fraudulent, unreasonable or was guilty of willfully withholding royalty payments. The court's discretion to dissolve the lease, however, is limited to those situations where the lessee fraudulently withheld payment. If the nonpayment of royalties is found by the court to be reasonable the lessee can be subjected only to the payment of interest from the due date of the royalties.
Lessee contends that his tender of payment, even after the 30 day period, was timely payment since he responded to writing showing reasonable cause for the delay. Lessee contends that since payment or tender was so made, cancellation of the lease or damages is not available to the lessors under the provisions of Art. 139.
We disagree with the lessee's position.
First, Articles 138-140 contemplate that if payment is made, it must be made within 30 days of the receipt of the notice. A response to lessors' notice of nonpayment does not have the effect of extending the 30 day period to some future date. Secondly, Art. 139 provides the lessor with a remedy even though payment is timely made. This article allows cancellation of the lease if fraud is present or the court may award damages, interest and attorney's fees to the lessor, if the original failure to pay was either fraudulent, willful or without reasonable grounds. If we were to agree with lessee's position, we would be concluding that the legislature intended to allow the lessor a remedy where appropriate payment was made within the 30 day period, but no remedy is available to the lessor if there was a response to the notice within the 30 days giving reasons for nonpayment and payment is later tendered. Such a conclusion is untenable.
This brings us to the crucial question of what remedy is available to the lessors, if any, where no royalty payment is made within 30 days of notice, but a response is made by the lessee in writing, explaining the delay in payment.
Article 139 provides the lessor with a remedy even though payment is made within the 30 days. Article 140 provides a remedy where no such payment is made and no response is made to the lessor's notice.
Article 140 reads as follows:
"§ 140. Effect of nonpayment in response to notice or failure to state cause therefor.
"If the lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the required notice, the court may award as damages double the amount of royalties due, interest on that sum from the *366 date due, and a reasonable attorney's fee regardless of the cause for the original failure to pay royalties. The court may also dissolve the lease in its discretion." (Emphasis added)
We find no specific article which sets forth the effect of a nonpayment within the 30 days but a response to the notice is timely made by the lessee. We conclude, however, that a lessor does have a remedy in such a situation. We come to this conclusion as a result of our reflection on the background of this legislation, its purpose and intent, fully set out in the comment following Art. 137, and a reading and consideration of Articles 137-141 which were adopted pursuant thereto.
The comment following Art. 137, in part, reads as follows:
"The real problem in this area is that lessors are entitled to some meaningful remedy besides recovery of interest which will assure that they will receive timely payment of production royalties. On the other hand, however, the harshness of cancelling a lease which may involve the investment of millions of dollars because of the nonpayment of an insignificant sum of money is obvious. It is the intent of Articles 137-141 to provide lessors with a meaningful remedy while simultaneously giving operators who have made substantial investments in producing properties the security of title which the nature and size of their investment deserves." (Emphasis added)
To effectuate such intent and purpose we must invoke the rules of a statutory interpretation which are as follows:
The universal and most effective way of determining the true meaning and intent of a doubtful or ambiguous statute is to consider its reason and spirit, or the cause which prompted its enactment by the legislature.
The court's objective in construing a statute is to ascertain the legislative intent and interpret the law so as to give it the meaning the lawmaker obviously intended, and not to construe the legislation so rigidly as to give it a preposterous or strange meaning. Statutes must be given a reasonable interpretation. LSA-C.C. Art. 18; Louisiana Insurance Guaranty Ass'n v. Guglielmo, 276 So.2d 720 (La.App. 1st Cir. 1973), writ ref'd, 279 So.2d 690 (La.1973).
It would be unreasonable to deny a lessor a remedy where no payment was made but a response was made by the lessee within 30 days and, at the same time, afford a lessor a remedy in a situation where payment was made within the 30 days or in a situation where neither payment nor response was made to the notice.
To effectuate the intent of these provisions of the Mineral Code, we hold that where no payment was made within the 30 days, but a response was timely made, the lessor may file suit to have the court determine, as a matter of fact, whether the cause of delay, as expressed by the lessee in the response, is a reasonable cause for such a delay. If the reasons so given by the lessee are determined by the court to be reasonable, the lessor would be limited to an award of interest on the royalties owed, computed from the date due.
If the court determines that the reasons given for the delay of royalty payments are unreasonable, the court may award damages of double the royalty, plus interest, reasonable attorney's fees and even dissolution of the lease if the facts so justify.
As to the exercise of the court's discretion to order dissolution of the lease for failure to pay royalties, Art. 141 provides that such discretion should, as a matter of policy, be exercised only if the conduct of the lessee is such that the remedy of damages is "inadequate to do justice."
We conclude that the trial court erred in granting the exception of prematurity and dismissing the suit. The lessors are entitled to a hearing for the purpose of obtaining a determination as to the reasonableness or unreasonableness of lessee's nonpayment of royalties that may be due and, depending on the outcome thereof, to have determined the relief to be granted to the lessors in accordance with these views.
*367 For the above reasons, the judgment of the trial court is reversed and set aside. This case is remanded to the trial court for a new trial in accordance with the views expressed herein. Costs of this appeal are assessed to defendant-appellee.
REVERSED, SET ASIDE AND REMANDED.
NOTES
[1] See comment following Art. 137; also, 50 Tulane Law Review 732, 815-819.