698 So.2d 1001 (1997)
Karl E. LEWIS, Jr., Florence Jastremski, Martha Lynn Lewis and All Similarly Situated Class Members
v.
TEXACO EXPLORATION AND PRODUCTION CO., INC., Formerly the Texaco Producing Co., Inc., Individually and as Successor in Interest to Getty Oil Co. and Koch Gateway Pipeline Co., Individually and as Successor in Interest to United Gas Pipeline Co.
No. 96 CA 1458.
Court of Appeal of Louisiana, First Circuit.
July 30, 1997.
Rehearing Denied September 2, 1997.
*1005 Virgil A. Lacy, III, Metairie, for Plaintiffs/Appellees Karl E. Lewis, Jr., et al.
James M. Funderburk, Houma, for Plaintiffs and Defendants in Reconvention Karl E. Lewis, Jr., Theone Collins, Florence Jastremski, and Patricia Clark.
Charles R. Minyard, Lafayette, Roxanne Armstrong, Houston, TX, for Defendant Apache Corporation.
Joe B. Norman, Neil C. Abramson, New Orleans, for Defendant/Appellant Texaco Exploration & Production, Inc.
Robert J. Young Jr., New Orleans, for Defendant Koch Gateway Pipeline.
Charles Hanemann, Houma, for United Gas Pipeline Co.
John L. Lanier, Thibodaux, for Texaco, Inc.
David R. Richardson, Harry R. Holladay, New Orleans, for Amicus Curiae Shell Western E. & P., Inc., Amoco Production Company, and Amerada Hess Corp.
G. Edward Pickle, Houston, TX, for Amicus Curiae Shell Western E. & P., Inc.
Patrick A. Juneau, Michael Juneau, Sue Nations, Lafayette, for Amicus Curiae Kerr-McGee Corporation.
Robert L. Redfearn, Donald J. Brannan, Douglas W. Redfearn, New Orleans, for Amicus Curiae Oxy U.S.A. Inc.
Louis R. Davis, Lafayette, for Amicus Curiae Phillips Petroleum Company.
John C. Boyce, Charles Leche, New Orleans, for Amicus Curiae Independent Petroleum Association of America.
G. William Jarman, Linda S. Akchin, Baton Rouge, for Amicus Curiae Mid-Continent Oil & Gas Association.
Before CARTER, LeBLANC and PARRO, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment, granting plaintiffs' request for class certification in mineral royalty litigation.

FACTUAL AND PROCEDURAL BACKGROUND
The Hollywood Field is located in Terrebonne Parish, Louisiana, and includes within its boundaries the City of Houma. The Hollywood Field consists of a large reservoir-wide unit, the Southdown Sand Unit, and a number of smaller units for other sands.
In the Hollywood Field, there are approximately 375 separate mineral leases, including a lease known as the Houma Community Lease, in favor of Texaco Exploration and Production Co., Inc. (Texaco) and its predecessors. These leases were executed on *1006 twenty-one (21) different lease forms, and there are approximately eight (8) differently worded royalty clauses in those leases. There are approximately 1,600 royalty owners under these separate mineral leases and an additional 2,679 royalty owners under the Houma Community Lease.
Texaco and its predecessors have marketed gas from the Hollywood Field under various sales contracts since the early 1950s. In the 1950s, Getty Oil Company (Getty) entered into two gas contracts with United Gas Pipe Line Company (United) for the sale of gas from the Hollywood Field. Gas produced from the Hollywood Field leases was dedicated to the Getty-United gas contracts. The first contract was entered into on April 25, 1953, and was renewed on December 9, 1975, and again on February 2, 1981 (hereafter referred to as "the 1981 contract"). The second contract was entered into on May 14, 1959, and was renewed on June 12, 1979 (hereafter referred to as "the 1979 contract"). The 1979 contract expired on January 1, 1985, and the 1981 contract expired on January 1, 1986. Both contracts contained "take-or-pay" clauses, which required the purchaser to pay for a certain annual quantity of gas regardless of whether that quantity was actually taken. In the event a "take-or-pay" payment was made, but no gas was taken, the contracts provided for a time period within which the purchaser could make up for the gas previously paid for, but not taken.
While the Getty-United gas contracts were in effect, various disputes arose, including allegations that United failed to comply with the "take-or-pay" provisions of the gas contracts, failed to make reimbursements to Getty for production-related costs under a federal order, and failed to pay for gas actually delivered to United under the gas contracts. After Texaco acquired Getty, Texaco also pursued United for claims arising under the Hollywood Field and other gas contracts.
On November 1, 1987, Texaco and United entered into a settlement agreement, resolving all outstanding disputes concerning approximately seventy-five (75) gas contracts, including the two Getty-United gas contracts involving the Hollywood Field. The November 1, 1987 settlement required United to pay Texaco $32,841,430.67, which was paid on February 23, 1988.
In 1992, the Louisiana Supreme Court in Frey v. Amoco Production Company, 603 So.2d 166 (La.1992) determined that royalties are owed on "take-or-pay" provisions under the specific lease royalty provisions and are, thus, also owed on "take-or-pay" settlements. None of the Hollywood Field royalty owners received any of the settlement proceeds from Texaco.
On July 9, 1993, five lessors in the Hollywood Field sent Texaco a letter that purported to be a demand pursuant to LSA-R.S. 31:137 on behalf of all Hollywood Field royalty owners. Additionally, on the same date, these same five lessors sent another letter to Texaco that purported to be an individual demand for payment of amounts due to them. Three other lessors subsequently sent separate, individual demand letters. However, these individual demand letters did not purport to make demand on behalf of the other royalty owners. Texaco responded to these demands, providing reasons why additional royalties were not owed. The remaining lessors and royalty owners did not make individual demands for royalty payments.
On January 11, 1994, plaintiffs, Karl E. Lewis, Jr., Florence Jastremski, and Martha Lynn Lewis,[1] filed a petition for declaratory judgment, for monetary relief, and for an accounting against Texaco, individually and as successor-in-interest to Getty and other companies, and against Koch Gateway Pipeline Company (Koch), successor to United.[2] In the petition, plaintiffs also sought recovery of royalties attributable to a natural gas settlement between United and Texaco and, alternatively, damages.
The named plaintiffs are mineral lessors and royalty owners in the Hollywood Field in Terrebonne Parish and appear as the representative claimants, seeking to certify this *1007 action as a class action. The proposed class members include the representative claimants, Pelican Lake Co., Inc., Patricia H. Clark, Theone Collins, George Clark,[3] and all similarly situated class members consisting of those lessors or royalty owners having mineral interests in mineral leases owned by Texaco. In May 1994, Texaco made royalty payments to the plaintiffs on a portion of the November 1, 1987 settlement.
Texaco filed an exception pleading the objection of prematurity. In its exception, Texaco contended that plaintiffs' action was premature in that the Mineral Code does not permit a written demand for royalty payments to be made on behalf of unnamed lessors or a "class action" demand letter. Texaco reasoned that, because it did not receive a required demand letter on behalf of "all similarly situated class members," the class action was filed prematurely. Texaco also filed an exception pleading the objection of improper use of class action, alleging that the members of the purported class are not so numerous as to make it impracticable for all to join as parties, that the rights sought to be enforced for the class members are not common to all class members, and that the representative claimants cannot ensure adequate representation. Texaco filed a reconventional demand against Karl E. Lewis, Jr., Theone Collins, Florence Jastremski, and Patricia H. Clark, setting forth defenses of set-off and compensation. The allegations in the reconventional demand involve provisions of mineral leases covering property located in the Caillou Island Field in Terrebonne Parish.[4]
Plaintiffs subsequently filed a motion to certify the class action.[5] By order dated September 19, 1995, the trial court certified the class, defining the class as follows:
Any and all persons who, as of November 1, 1987, held a royalty interest in any Hollywood Field mineral lease dedicated to the Gas Purchase Agreement between Getty Oil Company and United Gas Pipeline dated June 12, 1979, or the Gas Purchase Agreement between Getty Oil Company and United Gas Pipeline dated February 2, 1981, except those persons who also held an interest as a working interest owner, gas purchaser, or overriding royalty interest owner.
From this judgment, Texaco appealed, raising the following issues for review:
1. Is certification of a class of royalty owners improper where the class members have not made individual demand as required by La.R.S. 31:137, but rather a single demand letter was provided on behalf of unidentified class members?
2. In light of the plaintiffs' failure to comply with the notice requirements of the Mineral Code was the certification order issued by the district court premature?
3. Is this case an example of the spurious class action, which is not recognized in Louisiana?
4. Is the class certification improper when the plaintiffs' claims arise from separate contracts with the defendant (i.e., their mineral leases), where those contracts were written on different forms and have different royalty provisions?
5. Have the Representative Claimants satisfied the class certification requirements of commonality, superiority and adequacy of representation?
On October 9, 1996, Texaco filed a motion to strike an exhibit to plaintiffs' appellate brief. By order dated October 10, 1996, Texaco's motion was referred to the merits.
By orders of this court, various entities were authorized to file amicus curiae briefs. Shell Western E. & P., Inc., Amoco Production Company, Amerada Hess Corp., Kerr-McGee Corporation, Oxy U.S.A., Inc., and Phillips Petroleum Company filed an amicus brief on October 16, 1996. Mid-Continent Oil & Gas Association filed an amicus brief *1008 on October 25, 1996. The Independent Petroleum Association of America filed an amicus brief on November 8, 1996. In the briefs, the amici argue that the trial court erred in finding that the plaintiffs complied with the notice requirement set forth in the Mineral Code, and LSA-R.S. 31:137 specifically, and that the named plaintiffs failed to show the existence of a "common character" between the rights they assert and the rights of the absent members of the class.

MOTION TO STRIKE
In its motion to strike, Texaco sought to strike an attachment to plaintiffs' appellate brief. Texaco reasoned that plaintiffs' brief violated Uniform RulesLouisiana Courts of Appeal, Rule 2-12.2(1) in that the number of pages in the appellate brief (which numbered twenty-five), when added to the number of pages in the exhibit (which numbered fifteen), exceeded the maximum length permitted by the Uniform Rules.
We note that the attachment to plaintiffs' brief was not introduced at the class certification hearing. In reviewing the trial court judgment, we may not and do not consider these attachments, because only that which is in the record may be reviewed by an appellate court on appeal. See State v. Robertson, 518 So.2d 579, 585 (La.App. 1st Cir.1987), writ denied, 523 So.2d 227 (La. 1988). See also Uniform RulesLouisiana Courts of Appeal, Rule 2-12.4; En Banc Order, First Circuit Court of Appeal (Aug. 24, 1995), which restricts the filing of attachments to briefs.[6] Thus, because we cannot consider these attachments, Texaco's motion to strike is denied.

LSA-R.S. 31:137 NOTICE REQUIREMENT
Texaco and the amici contend that LSA-R.S. 31:137 requires individual lessors to make an individual demand in the lessor's individual name. Texaco and the amici reason that the use of a "class action" demand letter is insufficient to satisfy the requirements of LSA-R.S. 31:137 and that, to the extent that the rules governing class actions permit such an interpretation, they are in conflict with the Mineral Code.
Prior to filing the instant suit, three representative claimants and two other potential class members sent Texaco a letter, purporting to make demand for the failure to properly pay royalties in the Hollywood Field. This letter stated that these lessors and royalty owners "seek to represent all royalty owners in the Hollywood Field as a class" and purported to make demand on behalf of those unnamed class members. Texaco urges that this letter is not an adequate pre-litigation demand as to the unnamed class members.
The applicable law as to notice and demand is set forth in the Louisiana Mineral Code. LSA-R.S. 31:137 et seq. establishes the procedure to be followed by a mineral lessor seeking the proper payment of royalties. LSA-R.S. 31:137 provides that, "[i]f a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease."
When the written notice has been given, the provisions of LSA-R.S. 31:138 become applicable. This provision affords the mineral lessee thirty (30) days after receipt of the required notice within which to pay the royalties due or to respond, in writing, by stating a reasonable cause for non-payment. Under LSA-R.S. 31:139, if the lessee pays the royalties demanded within thirty (30) days after receipt of the lessor's written notice, the remedy of dissolution becomes unavailable to the lessor, unless the lessee fraudulently withheld payment. Under LSA-R.S. 31:140, if the lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the notice, the court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, regardless of the *1009 cause for the original failure to pay royalties. The court may, in its discretion, dissolve the lease.
The Official Comment to LSA-R.S. 31:137 states "[i]t is the intent of [Mineral Code] Articles 137 [through] 141 to provide lessors with a meaningful remedy while simultaneously giving operators who have made substantial investments in producing properties the security of title which the nature and size of their investment deserves." These provisions provide lessors with some meaningful remedy, besides recovery of interest, to assure timely payment of the production royalties, and are balanced with the harshness of lease cancellation, which may involve the investment of millions of dollars. The Comment further notes that LSA-R.S. 31:137 does not intend that this notice be a demand for performance, as in the case of the traditional default under the Louisiana Civil Code, since the lessor may not desire performance. Rather, the device of notice is merely to inform the lessee he has not paid royalties deemed by the lessor to be due. The total effect of the articles is to provide an impetus to timely payment of royalties due, while giving lessees a reasonable way in which to avoid the harsh remedy of cancellation. It also affords the lessee an opportunity to evaluate a non-payment situation and to make a decision regarding whether the royalties allegedly due should be paid. Willis v. Franklin, 420 So.2d 1243, 1245 (La. App. 3rd Cir.1982).
This statutory scheme evidences a legislative determination that a mineral lessor does not have a right of action to judicially complain of the failure of his lessee to make timely or proper payments of royalties until he gives written notice of such failure to his lessee and allows the lessee thirty (30) days after receipt of the required notice to either pay the royalties due or state the reasonable cause for non-payment. Rivers v. Sun Exploration and Production Co., 559 So.2d 963, 969 (La.App. 2nd Cir.1990). As a result, the notice requirements set forth in LSA-R.S. 31:137 are an indispensable prerequisite to a judicial demand for dissolution of the lease or damages. Rivers v. Sun Exploration and Production Co., 559 So.2d at 969; Willis v. Franklin, 420 So.2d at 1245; Arceneaux v. Hawkins, 376 So.2d 362, 364 (La.App. 3rd Cir.1979). See Acquisitions, Inc. v. Frontier Explorations, Inc., 432 So.2d 1095, 1100 (La.App. 3rd Cir.1983); and Rebstock v. Birthright Oil & Gas Co., 406 So.2d 636, 643 (La.App. 1st Cir.), writ denied, 407 So.2d 742 (La.1981).
The initial issue presented by this appeal is whether the July 9, 1993 letter constituted an insufficient notice and demand to satisfy the requirements of LSA-R.S. 31:137, and thus, whether plaintiffs' motion for class certification is premature.
The Mineral Code does not contain any specific guidelines as to the precise requirements of the formal written demand set forth in LSA-R.S. 31:137, but requires only that the lessor "give his lessee written notice of such failure" to make timely and proper payment of royalties. Rivers v. Sun Exploration and Production Co., 559 So.2d at 969. Nowhere in the statute is there a requirement that a notice be given by each and every mineral lessor individually. The use of the word "he" in LSA-R.S. 31:137 is not indicative of any legislative intent that each individual lessor provide such notice. The use of the masculine term is equally applicable to the feminine, and the use of the singular is likewise applicable to the plural. LSA-R.S. 1:7 and 8. Nor has the jurisprudence established any specific requirements for the sufficiency of that notice. Based upon our review of the Mineral Code and the jurisprudence, it appears the adequacy of the notice is determined on a case-by-case basis, giving due consideration to the particular facts of each case. Rivers v. Sun Exploration and Production Co., 559 So.2d at 969.
Numerous cases address the timeliness of the notice; other cases address the sufficiency of the demand. In Rivers v. Sun Exploration and Production Co., 559 So.2d at 969-70, the court affirmed a trial court judgment and held that a five-page demand letter was insufficient. The court reasoned that the import of the letter was the lessors' belief that they were receiving less than a fair price for production from a unit, and thus, they demanded payment at a higher rate. The *1010 letter went on to demand payment for all production saved and marketed for the prior three-year period. The court determined that the notice was drafted in such a manner as to motivate the defendant to investigate only the pricing issues. In Willis v. Franklin, 420 So.2d at 1244-45, one of the plaintiffs' co-lessors notified the mineral lessee that he had not received payment of royalties for a six-month period. Thereafter, one of the plaintiffs wrote a similar demand letter to the mineral lessee on his behalf and on behalf of another plaintiff. This letter demanded payment of royalties due him and inquired as to the reason for non-payment. Nine days later, the plaintiffs filed a suit for dissolution of the mineral lease and for damages. The royalty payments were tendered to the plaintiffs within twelve days after suit was filed. In dismissing plaintiffs' suit, the appellate court noted that the suit was premature because the plaintiffs did not give the lessee the thirty-day written notice required by LSA-R.S. 31:137 and 138.[7] In Rebstock v. Birthright Oil & Gas Co., 406 So.2d at 642-43, the plaintiffs wrote three letters, purportedly in compliance with LSA-R.S. 31:137. In finding that none of the letters complied with LSA-R.S. 31:137 and dismissing the suit as premature, the court examined each letter. The initial letter claimed that the lease had expired several years earlier for failure to obtain actual drilling and production on the leased premises. The second letter made no reference to the Roger Rebstock lease, but stated that the Avilia St. Pierre Rebstock and Bussie Rebstock lease had expired. While it requested payment of productions after costs, it did not demand payment of royalties pursuant to the lease agreement; nor did it give the defendants thirty (30) days in which to comply as required by LSA-R.S. 31:138. The third letter was sent more than ninety (90) days after the original petition was filed and did not request royalties as set forth in the lease. Moreover, the letter only requested information about the royalty payments and threatened suit for an accounting. Accordingly, the court determined that the plaintiffs had no right to proceed with the action because of their failure to properly comply with the requirements of LSA-R.S. 31:137 and 31:138. In Massey v. TXO Production Corp., 604 So.2d 186, 188 (La.App. 2nd Cir.1992), the demand letter came less than thirty (30) days before the filing of the amended petition. Accordingly, the court determined that the amended petition was premature.
The Mineral Code clearly establishes that the lessee has the obligation to make timely payment of royalties to the lessor. LSA-R.S. 31:123. Given the clear existence of this duty on the part of the lessee, it appears that the lessor's demand for payment required by LSA-R.S. 31:137 must be something more than the mere recitation of the lessee's contractual and statutory duty to pay royalties. If the demand requirement was only that the lessor make a general statement, asking the lessee to pay royalties, the lessee would be at a severe disadvantage, because any prudent lessor would regularly and routinely send out such a general demand, regardless of whether he knew of any specific problem with the payment of his royalties. This would defeat the obvious purpose of LSA-R.S. 31:137, which is to give the lessee reasonable notice of a problem or deficiency with the payment of royalties and the opportunity to correct it. Therefore, it seems that the intent of this portion of the Mineral Code is that the notice be of a more specific nature, so as to reasonably alert the lessee and to allow for an appropriate investigation of the problem by the lessee.
In the instant case, a three-page letter written by the five royalty owners on July 9, 1993, made demand on behalf of five of the named plaintiffs, "who seek to represent all royalty owners in the Hollywood Field as a class, with respect to royalties owed by [Texaco] under certain mineral leases... covering mineral interests in the Hollywood Field, Terrebonne Parish, Louisiana." The letter went on to identify various contracts relating to the sale of gas from leases in the Hollywood Field which were acquired by Texaco. Pursuant to LSA-R.S. 31:137 and Frey v. Amoco Production Company, *1011 the letter demanded from Texaco the payment of royalties, including, but not limited to (1) royalties on all monies paid under the gas contract settlement agreement, (2) royalties on the contract price of the gas actually taken, and/or (3) royalties due under the "take-or-pay" provisions of the gas contracts. The letter also requested an accounting of all royalties, together with disclosure of relevant information and documentation necessary to make a determination of (1) the amount of gas the purchasers under the gas contracts were obligated to take, (2) the amount of gas actually taken, (3) the deficiency in the purchasers' "take-or-pay" obligation for each period, (4) description of the consideration and terms in any contracts or settlement agreements pertaining to claims and litigation arising under the gas purchase contracts, and (5) the amount of past due royalties owed to Hollywood Field royalty owners.
The manner in which this notice was drafted was such that Texaco was fully and completely notified of the demands of the named plaintiffs, as well as the intention of those named plaintiffs to demand royalty payments on behalf of all of the Hollywood Field royalty owners. After carefully reviewing the wording of the demand letter, we find that the notice fully apprised Texaco of the nature of the claim (demand for royalty payments under the settlement agreement), the identity of all lessors for whom the demand was made (all mineral royalty owners in the Hollywood Field), the gas contracts acquired by Texaco under which the royalties were allegedly due, and all other information Texaco needed to investigate the claims and respond in a timely manner. In fact, the information was sufficient for Texaco to determine the identity of the royalty owners in the Hollywood Field, because Texaco had paid those royalty owners in 1994. Moreover, Texaco has not established that any prejudice resulted from any alleged insufficiency of the information contained in the July 9, 1993 demand letter. Accordingly, we find no error in the trial court judgment that the July 9, 1993 demand letter was sufficient under the unique facts of this case.

REQUISITES FOR CLASS ACTIONS
Having concluded that the July 9, 1993 demand letter complied with the notice requirements of LSA-R.S. 31:137, we must examine whether the plaintiffs established the requisites to maintain a class action.
Articles 591 and 592 of the Louisiana Code of Civil Procedure set forth the criteria for a class action as follows: (1) a class so numerous that joinder is impractical; (2) the joinder of parties who are members of the class and are able to provide adequate representation for absent members; and (3) a "common character" between the rights of the representatives of the class and the absent class members. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 616 (La.1984); Williams v. State, 350 So.2d 131, 133 (La.1977); Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d 144, 148 (La.1975); Boudreaux v. State, Department of Transportation and Development, 96-0137, p. 6 (La.App. 1st Cir. 2/14/97); 690 So.2d 114, 119; Ellis v. Georgia-Pacific Corporation, 550 So.2d 1310, 1314 (La.App. 1st Cir.1989), writ denied, 559 So.2d 121 (La. 1990); Livingston Parish Police Jury v. Illinois Central Gulf Railroad Company, 432 So.2d 1027, 1029 (La.App. 1st Cir.), writ denied, 437 So.2d 1137 (La.1983).
All three of the elements must be met for a class action to be appropriate, and it is well settled that it is plaintiff's burden to prove each element by a preponderance of the evidence. Becnel v. United Gas Pipeline Company, 613 So.2d 1155, 1157 (La.App. 5th Cir.1993). The trial court is afforded great discretion in class action certification. Wide latitude must be given the trial court in considerations involving policy matters and requiring an analysis of the facts under guidelines helpful to a determination of the appropriateness of a class action. Pulver v. 1st Lake Properties, Inc., 96-248, p. 4 (La.App. 5th Cir. 9/18/96); 681 So.2d 965, 967; Ellis v. Georgia-Pacific Corporation, 550 So.2d at 1313; Terrebonne Bank & Trust Company v. Lacombe, 510 So.2d 78, 80 (La. App. 1st Cir.1987). In other words, the trial court has great discretion in deciding whether a suit should be certified as a class action. *1012 Elliott v. State, 619 So.2d 137, 140 (La.App. 1st Cir.), writ denied, 625 So.2d 1034 (La. 1993); Terrebonne Bank & Trust Company v. Lacombe, 510 So.2d at 80. Unless the trial court has committed manifest error in its factual findings, or has abused its discretion in deciding that class certification is appropriate, we must affirm the trial court's determination. Boudreaux v. State, Department of Transportation and Development, 690 So.2d at 119.

A. NUMEROSITY
The first requirement, that the persons constituting the class are so numerous as to make joinder impracticable, is often referred to as "numerosity." Becnel v. United Gas Pipeline Company, 613 So.2d at 1157. The class action was devised to solve problems associated with adjudicating lawsuits in cases involving an unwieldy number of parties who should be joined. In lawsuits involving numerous plaintiffs, there is a likelihood that the membership of the group will continually change through death or otherwise, thus causing recurring interruptions of the action. Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d 1177, 1181 (La.App. 1st Cir.), writs denied, 605 So.2d 1122 (La.1992). See Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d at 148.
The numerosity requirement is not met simply by alleging a large number of potential claimants. Becnel v. United Gas Pipeline Company, 613 So.2d at 1157-58. In fact, the jurisprudence has held that, in certain circumstances, a "class" can be too numerous to satisfy the numerosity requirement. Becnel v. United Gas Pipeline Company, 613 So.2d at 1158, (citing Farlough v. Smallwood, 524 So.2d 201 (La.App. 4th Cir.), writ denied, 526 So.2d 810 (La.1988)). The court in Farlough v. Smallwood stated:
To establish numerosity, `a class so numerous that joinder is impracticable,' is a determination made on the facts and circumstances of each individual case. Although the identification of all potential class members is unnecessary, the party seeking certification should be able to establish a definable group of aggrieved persons.
524 So.2d at 203 (citation omitted).
In the instant case, as of December 31, 1994, Texaco was the mineral lessee under approximately 375 mineral leases in the Hollywood Field. There are approximately 1,600 royalty owners under these leases. The Houma Community Lease covers the royalty interests of approximately 2,679 additional Hollywood Field mineral lessors/royalty owners. Texaco does not dispute that the size of the class satisfies the numerosity requirement. Texaco's challenge to the class certification is based upon the lack of adequate representation because of atypical claims and the lack of "common character" between the rights sought to be enforced by the representative plaintiffs and those of the other members of the class. The numerosity requirement is satisfied in this case.

B. ADEQUATE REPRESENTATION
The second requirement, "proper joinder," is to ensure adequate representation of the absent class members by requiring that one or more of the class members will represent the interests of the entire class adequately. Becnel v. United Gas Pipeline Company, 613 So.2d at 1158. Generally, the claims of the class representatives should be a cross-section of, or typical of, the claims of all class members. Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d at 1181. If the claims of multiple class representatives are demonstrated to be a cross-section of the types of claims asserted by the class members, and not antagonistic to the class, the representatives are adequate. See Ellis v. Georgia-Pacific Corporation, 550 So.2d at 1315. The determination of whether the plaintiffs are situated so that they may fairly insure adequate representation is made by the court. Ellis v. Georgia-Pacific Corporation, 550 So.2d at 1314. This factual determination will not be disturbed by this court absent manifest error. Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d at 1181.
Texaco contends that the representative claimants do not provide adequate representation for the absent class members *1013 because their leases do not contain every type of royalty clause. A review of the royalty clauses from the different lease forms in the Hollywood Field reveals that the variety of language regarding the payment of royalties on gas sold is contained in the representative claimants' leases.
Texaco further contends that the type of relief sought by the representative claimants makes them inadequate representatives. The testimony of the various representative claimants revealed that each would vigorously pursue whatever remedy is available to him and the class members. Any potential class member who is dissatisfied with the relief sought by the representative claimants or who desires other relief will be afforded an opportunity to exclude himself from the class. Moreover, the fact that individual class members may be entitled to varying damage awards is not fatal to class certification, especially where common liability issues predominate over individual damage issues. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 620. See Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d at 1182; Ellis v. Georgia-Pacific Corporation, 550 So.2d at 1315.
In the instant case, the representative plaintiffs are mineral royalty owners and are similarly situated to the absent members of the class. The claims of the representative claimants are typical of the claims of the absent class members; they are small claims for royalties and damages which cannot be economically litigated on an individual basis. All claims arise out of Texaco's alleged liability for royalties and/or damages relating to the November 1, 1987 settlement with United. These claims do not appear to be atypical. Instead, the claims emerge as a cross-section of the types of claims which may be asserted by all class members. Clearly, the court had sufficient facts before it to make a determination that the named plaintiffs would fairly insure the adequate representation of the absent class members.

C. COMMON CHARACTER
In order to maintain the class action, there must not only be a common question of law or fact as required by LSA-C.C.P. art. 591 (1), there must also be a "common character" among the rights of the representatives and absent class members. Elliott v. State, 619 So.2d at 139. The questions of law or fact common to the members of the class must predominate over any questions affecting only individual members. Becnel v. United Gas Pipeline Company, 613 So.2d at 1158. However, the phrase "common character" encompasses more than the simple existence of questions of law and fact common to the class. Ellis v. Georgia-Pacific Corporation, 550 So.2d at 1315. This requirement restricts the class action to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 616; Becnel v. United Gas Pipeline Company, 613 So.2d at 1158.
Texaco claims that the "common character" requirement is not met because the representative claimants and members of the purported class are not similarly situated with respect to the issues raised by the gas contracts, the mineral leases, and Texaco's defenses and reconventional demands as to certain plaintiffs.
Texaco urges that the differences between the two gas contracts (the 1979 and the 1981 gas contracts) destroy the common character of the class members' claims. However, the fact that the gas contracts had different provisions does not alter the class members' right under both contracts to recover royalties attributable to the November 1, 1987 settlement agreement. Any differences under the gas contracts affect only the calculation of the "take-or-pay" claims under those gas contracts, not Texaco's obligations to share the settlement proceeds with its royalty owners and to act for the mutual benefit of its royalty owners.
Texaco also argues that the different language in the Hollywood Field mineral leases affects the common character of the class members' claims. Given all of the various *1014 leases (375 in all), there are only about eight differently-worded royalty clauses. Most of the clauses require payment on either the market value of the gas sold or on the amount realized by the mineral lessee from the gas sales, and none of the leases expressly negate the royalty payments on gas contract settlement proceeds.
Texaco further argues that commonality is lacking under its defenses and reconventional demand. Texaco responded to the instant action by denying it owes royalty payments on any settlement proceeds, asserting that the class members' actions have prescribed, and asserting a reconventional demand for reimbursement against certain representative plaintiffs.
A review of the record and briefs in this case, using the analysis set forth by McCastle v. Rollins Environmental Services of Louisiana, Inc., indicates that a "common character" exists. The large number of claims to be asserted arises from one course of conduct by Texaco in settling the Hollywood Field gas contracts claims, failing to pay royalties on the settlement, and failing to notify the royalty owners of the gas contracts claims settlement. The plaintiffs have common rights to assert in this matter. The common thread that runs through each and every class member's claim was addressed in Frey v. Amoco Production Company, 603 So.2d at 181-82, namely, the right to share in the proceeds of the gas contracts settlement between Texaco and United relating to the Hollywood Field. Texaco's liability, if any, arises from the same obligation as that owed to all Hollywood Field royalty owners under Frey v. Amoco Production Company and LSA-R.S. 31:122. This class action seeks to enforce those common obligations. The common issues of liability predominate over the individual issues of damages and any individual defenses that may be asserted by Texaco.
When a "common character" of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of a procedural device: (1) effectuating substantive law; (2) judicial efficiency; and (3) individual fairness. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 616-17, (citing Williams v. State, 350 So.2d at 133-34 and Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d at 151); Ellis v. Georgia-Pacific Corporation, 550 So.2d at 1315.

1. Effectuating Substantive Law
Class actions may effectuate substantive law by: (1) opening courts to claims not ordinarily litigated, thus enabling courts to enforce legislative policies underlying those causes of action; and (2) enabling courts to examine the full implications of recognizing rights or remedies and to determine what outcome in litigation would best serve the policies underlying the causes of action. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 618; Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d at 1182. Without a procedural device, such as a class action, a large group of litigants with predominately small claims would not be able to pursue effectively an action of the type before us. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 619; Ellis v. Georgia-Pacific Corporation, 550 So.2d at 1316. However, the court must guard against a distortion in effectuating the substantive law or an unfair result caused by the inappropriate maintenance of a class action. A class action not properly defined or delineated would impede rather than implement the law. See McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 618-19.

2. Judicial Efficiency
The second inquiry focuses on judicial efficiency. A fundamental objective of the class action device is the achievement of economies of time, effort, and expense. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 619; Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d at 1183; Ellis v. Georgia-Pacific Corporation, 550 So.2d at 1316-17. Judicial efficiency may be better served by a class action because of the procedural devices available to the court. In spite of the additional burdens and responsibilities *1015 which the class action places on the court, any error to be made in maintaining a class action should be made in favor of upholding a class action because it is always subject to modification should new developments during the course of the trial so require. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 620; Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d at 1183. Pursuant to LSA-C.C.P. art. 593.1, the trial court has the discretion to amend or recall its certification; enlarge, restrict, or redefine the constituency of the class or issues; adopt a management plan for the litigation, including subdividing the action or separating the issues raised; and holding separate trials of separate issues. Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d at 1183.

3. Fairness To Parties
The third objective of the class action is to promote uniformity of decision to similarly situated persons, without sacrificing procedural fairness or causing undesirable results. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 621; Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d at 1183; Ellis v. Georgia-Pacific Corporation, 550 So.2d at 1318. To determine whether the class action will be fair to the parties, the court should consider the injustice which can result from inconsistent judgments in separate actions and the size of the claims of absent members. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 621; Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d at 1183; Ellis v. Georgia-Pacific Corporation, 550 So.2d at 1318.

ANALYSIS
Recently, in Stoute v. Wagner & Brown, 93-1207, p.4 (La.App. 1st Cir. 5/20/94); 637 So.2d 1199, 1200, writ denied, 94-1665 (La. 10/7/94); 644 So.2d 638, this court affirmed a trial court judgment, refusing to certify a class action in mineral royalty litigation. The trial court determined that, because of the numerous contracts and the many different rights, remedies, and defenses in-volved, it would not be more efficient to try those disputes in a class action.
However, the facts of Stoute are clearly distinguishable from the facts of the instant case. In Stoute, there were numerous defendants. In this case, there is only one defendant. In Stoute, numerous suits had been filed before the class action suit was filed, and the court noted that the class action would not eliminate re-litigation of issues. In this case, the instant suit is the only suit filed and it would eliminate any relitigation of issues. In Stoute, most of the potential claimants had retained counsel. In the instant case, no attorneys, other than the attorneys who filed the instant class action, have been retained. Moreover, under the facts of Stoute, the court determined that it was inappropriate and more burdensome to try the suits as a class action. In contrast, the trial court in this case determined that the class action was less burdensome.
In Pulver v. 1st Lake Properties, Inc., 681 So.2d at 969-70, our brethren of the fifth circuit affirmed a trial court's refusal to certify a class action. In Pulver, eight plaintiffs filed suit against their landlords following a flood in May of 1995. The trial court determined that plaintiffs failed to meet their burden of proving the numerosity test or that any common character existed between the representative plaintiffs and the absent class members. Moreover, the trial court determined that a class action would not promote judicial economy.
In the recent case of Boudreaux v. State, Department of Transportation and Development, 690 So.2d at 117, this court affirmed class certification for a group of landowners and lessees whose property had been damaged in a flood. The common characteristic of their claims was that all alleged the state's negligent design and construction of a bridge over I-12 caused flood waters to back up and inundate their property. This court concluded the factual findings of the trial court were supported by the evidence and were not manifestly erroneous, and the trial court's decision to certify the class was not an abuse of discretion.
In the instant case, the plaintiffs' claims are based on a recognition of a large *1016 number of common issues. The trial court determined that, despite the number of contract clauses, the issues to be resolved involved only a few common questions. Moreover, the court did not find the issues to be so uncommon that they should not be resolved in a single judicial proceeding. There is but one defendant, Texaco. The record disclosed no pending separate suits by individual plaintiffs. The possible individual claims for recompense are not so great as to compel several plaintiffs to prosecute in separate suits. The trial court further indicated that, although resolution of the case would be complex and possibly difficult from a management standpoint in that it would obviously take some time, it felt that proceeding as a class action would be more judicially efficient. Particularly, the trial court noted that under the facts of this case, inconsistent decisions might result if separate suits were filed. Because this could result in grave injustice, a class action appeared to be the best procedural device to promote fairness. The trial court also implied that uniformity of decisions would be more likely to result from a class action, and the use of the class action would afford the court the opportunity to respond to plaintiffs' claims, while being aware of the consequences to Texaco. Moreover, the trial court acknowledged that potential conflicts may arise as the litigation progresses, but observed that those issues could be addressed within the context of a class action.
Under the guidelines of McCastle v. Rollins Environmental Services of Louisiana, Inc. and applying the standard of review of Boudreaux v. State, Department of Transportation and Development, we find that the record before us provides a reasonable basis for the factual findings of the trial court. We cannot say the trial court committed manifest error in its factual findings, nor did it abuse its discretion in its decision to certify the class.

CONCLUSION
For the above reasons, the judgment of the trial court, certifying the class action, is affirmed. Texaco is cast for all costs.
AFFIRMED.
PARRO, J., dissents and assigns reasons.
PARRO, Judge, dissenting.
The salient issue in this appeal is whether LSA-R.S. 31:137 mandates written notice be made on an individual basis or permits such notice to be made on a "class-wide" basis. The majority opinion concludes that a class-wide notice is permissible because the statute contains no requirement that a notice be given by each and every mineral lessor individually. I respectfully disagree with this conclusion.
Article 137 of the Mineral Code reads:
If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease. (Emphasis added).
This statute is clear and unambiguous. It requires that each lessor give written notice to his lessee based on the individual contractual relationship between the lessor and the lessee. It does not authorize one lessor to give notice on behalf of another unidentified or named lessor. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LSA-C.C. art. 9. Because the language of Article 137 is clear and unambiguous, the requirement of individual notice as a prerequisite to suit must be applied to the facts of this case. Such an interpretation comports with other Louisiana cases requiring strict adherence to the requirements of the statute by the lessor. See Stoute v. Wagner & Brown, 93-1207 (La. App. 1st Cir. 5/20/94), 637 So.2d 1199, 1201, writ denied, 94-1665 (La. 10/7/94), 644 So.2d 638 (trial court indicated that because only those royalty owners who had written a demand for past royalties could sue their gas producers, any class action would be limited to those royalty owners); Willis v. Franklin, 420 So.2d 1243, 1245 (La.App. 3rd Cir.1982) (some, but not all, co-lessors made written demand, and suit was filed before the thirty-day *1017 period for response had elapsed, so suit was dismissed as premature); Arceneaux v. Hawkins, 376 So.2d 362, 364 (La.App. 3rd Cir.1979) (individual lessors made the requisite demand for payment and suit was allowed to proceed). Moreover, the requirement of individual notice from each lessor would not eliminate the possibility of a class action, once the proper notice was given.
For the foregoing reasons, I would reverse the judgment of the trial court and grant the exception of prematurity.
NOTES
[1] Terrebonne Parish School Board was added as a representative claimant plaintiff by amended petition filed April 4, 1994.
[2] By judgment dated October 26, 1994, Koch was dismissed, without prejudice, pursuant to a motion for summary judgment.
[3] George Clark was added as a named class member plaintiff by amended petition filed April 4, 1994.
[4] By judgment dated July 28, 1995, the trial judge severed the trial of the main demand from Texaco's reconventional demand.
[5] Numerous other pleadings were filed by the parties. None of the other pleadings are relevant to the issues presented in this appeal.
[6] However, we note that all parties, including the amici, attached various documents, other than those documents which Uniform RulesLouisiana Courts of Appeal require an appellant to attach to the appellate briefs.
[7] We note that no issue was raised in Willis relative to the demand letter written by one plaintiff on behalf of himself and another plaintiff.