**United States Court of Appeals
Fifth Circuit**

**F I L E D**

**July 6, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
For the Fifth Circuit**

No. 03-30602

CHEVRON USA, INC.

Plaintiff - Counter Defendant - Appellee

v.

VERMILION PARISH SCHOOL BOARD

Defendant - Counter Claimant - Appellant

TEXACO INC; TEXACO EXPLORATION & PRODUCTION, INC.

Plaintiffs - Counter Defendants - Appellees

v.

VERMILION PARISH SCHOOL BOARD

Defendant - Counter Claimant - Appellant

AMERADA HESS CORP.

Plaintiff - Counter Defendant - Appellee

v.

VERMILION PARISH SCHOOL BOARD

Defendant - Counter Claimant - Appellant

UNION OIL COMPANY OF CALIFORNIA

Plaintiff - Counter Defendant - Appellee

v.

VERMILION PARISH SCHOOL BOARD

Defendant - Counter Claimant - Appellant

MOBIL OIL CORP; MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST, INC.

Plaintiff - Counter Defendant - Appellees

v.

VERMILION PARISH SCHOOL BOARD
                                    Defendant - Counter Claimant - Appellant
                    _____

EXXON MOBIL CORP.
                                    Plaintiff - Counter Defendant - Appellee

v.

MARSHALL W. GUIDRY
                                    Defendant - Counter Claimant - Appellant
                    _____

EXXON MOBIL CORP.
                                    Plaintiff - Counter Defendant - Appellee

v.

VERMILION PARISH SCHOOL BOARD
                                    Defendant - Counter Claimant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, BARKSDALE and PRADO, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This case returns to us after the Louisiana Supreme Court denied certification, Chevron

USA, Inc. v. Vermilion Parish School Board, La. LEXIS 1696 (La. 2004), of the following

question which is the subject of this appeal:

> Whether the notice given in this case by counsel for a lessor on behalf of the
> putative class satisfies the requirement of Articles 137-141 of the Louisiana
> Mineral Code, requiring the lessor to give written notice of the lessee's failure to
> make timely or proper payment of royalties as a prerequisite to a judicial demand
> for damages or dissolution of the lease.

The procedural history and background of this case are set forth in our prior opinion. <u>Chevron U.S.A., Inc. v. Vermilion Parish Sch. Bd.</u>, 364 F.3d 607 (5th Cir. 2004). The Royalty Owners assert that class notice is permissible, based on favorable decisions on this issue by Louisiana Appellate courts in <u>Lewis v. Texaco Exploration and Prod. Co.</u>, 698 So.2d 1001 (La. App. 1 Cir. 1997), and <u>Duhé v. Texaco, Inc.</u>, 779 So.2d 1070 (La. App. 3 Cir. 2001). The Oil Companies contend that class notice is incompatible with the purpose of the Mineral Code provisions governing this issue.

Based on the plain language and purpose of LSA - R.S. 31:137 and related Mineral Code provisions, we conclude that the notice given of a lessee's failure to make timely or proper payment of royalties on behalf of a putative class does not satisfy the requirements of the Louisiana Mineral Code for the unnamed members of the class.

I.

Louisiana Mineral Code Article 137 provides:

> If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease.

LSA-R.S. 31:137. Neither this provision of the Mineral Code nor any of the related provisions in Articles 138-141 contain specific guidelines as to the precise requirements of the formal written demand set forth in LSA-R.S. 31:137. Neither do the statutes indicate explicitly whether notice must be given by each and every mineral lessor individually.[1] As set forth in our prior decision,

---

[1] We agree with the <u>Lewis</u> court that the use of the word "he" in Article 137 does not indicate legislative intent that each individual lessor must provide the notice required by that provision. <u>Lewis</u>, 698 So.2d at 1009. Under Louisiana Revised Statutes, Sections 7 and 8, words used in the singular include the plural and words used in one gender apply equally to the other gender. LSA - R.S. 1:7 and 8.

3

no decisions of the Louisiana Supreme Court directly address the question in this case and decisions of Louisiana intermediate appellate courts are conflicting.[2]

Even if the Louisiana intermediate appellate court decisions were not in conflict, under Louisiana's Civil Law tradition, courts look first and foremost to the statutory law.[3] Article 1 of the Louisiana Civil Code instructs that "the sources of law are legislation and custom." La.Civ.Code Ann. art.1. "The primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts. The concept of *stare decisis* is foreign to the Civil Law, including Louisiana" Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992); quoting Tate, *Techniques of Judicial Interpretation in Louisiana*, 22 La.L.Rev. 727 (1962); other internal citations omitted. Therefore, in cases such as this, although we may be guided by decisions rendered by the Louisiana appellate courts, we are not strictly bound by them, particularly when the jurisprudence has not developed to the status of *jurisprudence constante* (a series of decisions in accord on a given issue). Id. As our analysis calls for interpreting a statute, our starting point is the statute itself.

To properly understand Article 137, it must be considered in context with its purpose and

---

[2] See Lewis v. Texaco Exploration and Production Co., Inc., 698 So.2d 1001 (La. App. 1 Cir. 1997), and Duhé v. Texaco, Inc., 779 So.2d 1070 (La. App. 3 Cir. 2001). Compare Stoute v. Wagner & Brown, 637 So.2d 1199 (La. App.1 Cir. 1994).

[3] In predicting how the Louisiana Supreme Court would rule on an issue of state law, the decisions of intermediate state courts provide guidance to a federal court, but are not controlling. Matheny v. Glen Falls Ins. Co., 152 F.3d 348, 354 (5th Cir. 1998).

the purpose and function of related articles 138 to 141.[4] Article 137 requires a mineral lessor to give his lessee written notice of his claim of failure to make timely or proper payment of royalties as a prerequisite to a judicial demand, i.e. filing suit seeking relief. LSA - R.S. 31:137. Once written notice has been given, Article 138 gives the mineral lessee thirty days to either pay the royalties due or respond, in writing, by stating a reasonable cause for non-payment.[5] Under Article 139, if the lessee pays the royalties demanded within thirty days after receipt of the lessor's written notice, the remedy of dissolution of the lease becomes unavailable to the lessor, unless the lessee fraudulently withheld payment.[6] Under Article 140, if the lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the notice, the court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, regardless of the cause for the original failure to pay

---

[4] See La. Civ. Code Ann. art. 10, "when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law."

[5] LSA - R.S. 31:138 states, **"Required response of lessee to notice**. The lessee shall have thirty days after receipt of the required notice within which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the royalties or stating or failing to state a reasonable cause for nonpayment within this period has the following effect on the remedies of dissolution and damages."

[6] LSA - R.S. 31:139 states, "**Effect of payment in response to notice**. If the lessee pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the original failure to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on the royalties computed from the date due, and a reasonable attorney's fee if such interest is not paid within thirty days of written demand therefor."

royalties.[7] The court may also, in its discretion, dissolve the lease.[8]

The Official Comment to LSA-R.S. 31:137 states that "[i]t is the intent of [Mineral Code] Articles 137-141 to provide lessors with a meaningful remedy while simultaneously giving operators who have made substantial investments in producing properties the security of title which the nature and size of their investment deserves." The Official Comment further describes the balance struck by these articles as follows:

> The total effect of these articles, then, is to provide a spur to timely payment of royalties due while giving lessees a reasonable way in which to avoid the harsh remedy of cancellation. The spur is the special remedy. The means for avoiding cancellation is by responding within the stated period to the notice of failure to pay required by Article 137.

LSA - R.S. 31:137, Official Comment.

The Oil Company lessees argue that the above provisions, read as a whole, compel the conclusion that the notice and response system described above is incompatible with allowing notice to be given on a class basis, rather than by each individual lessor or royalty owner. We agree. The notice to lessees required by Article 137 does not simply trigger a thirty day waiting period before suit may be filed. Rather it triggers an obligation on the lessee to investigate the complaint and respond in order to avoid substantial penalties, including lease cancellation. The

---

[7] LSA - R.S. 31:140 states, "**Effect of nonpayment in response to notice or failure to state cause therefor**. If the lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the required notice, the court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee regardless of the cause for the original failure to pay royalties. The court may also dissolve the lease in its discretion."

[8] Id. See also, LSA - R.S. 31:141 states, "**Dissolution not a favored remedy.** In a case where notice of failure to pay royalties is required, dissolution should be granted only if the conduct of the lessee, either in failing to pay originally or in failing to pay in response to the required notice, is such that the remedy of damages is inadequate to do justice."

6

putative class as defined by the Royalty Owners in this case would include all royalty and overriding royalty interest owners in all Louisiana mineral leases owned by the Oil Companies whose royalties have been computed using either of the two methods challenged by the Royalty Owners. The Royalty Owners concede that the class would number in the thousands. Permitting the demand to be made on a class basis, especially in a case such as this, would deprive the lessee of any real ability to respond within the relatively short time period allowed and upset the balance of rights between lessor and lessee carefully established by the Louisiana Legislature in Mineral Code Articles 137 to 141.

The Royalty Owners note that Articles 138 and 140 require only a "reasonable" response and suggest that a "reasonable" response to a class notice may be that the lessees require additional time to investigate the claim of improper payment of royalties. The Mineral Code provisions do not define what constitutes a reasonable response and failure to make what a court considers a reasonable response carries harsh penalties. These penalties include damages equal to double the amount of royalties due, interest and attorney's fees, and even lease cancellation. Allowing class notice increases the burden of responding to an Article 137 notice by the additional complexity necessarily related to multiple and unidentified lessors, multiple leases, multiple contracts between lessees and their purchasers of oil and gas, and expanded geographic area with no clear provision that the lessees would be protected in the event that they are unable to resolve the question raised by the notice within the thirty day period allowed for a response.

Allowing demand to be made on a class basis also raises other questions not answered by these Mineral Code provisions. It is questionable whether class notice can satisfy the statutory prerequisite to litigation for the putative class members because it is unclear whether the putative

7

class representatives have the legal authority to make demand under Article 137 for lessors who do not know that demand is being made on their behalf. It is also unclear to whom the lessees should respond. Does a reasonable, timely response to the putative class representative protect the lessee from owing statutory penalties to the individual class members who do not receive a response? If the lessee elects to respond by paying royalties due, to whom should the payments be made, to the putative class representative or to individual lessors and royalty owners? These questions which arise under the interpretation urged by the Royalty Owners but which would not arise under our reading of these articles are a significant consideration leading us to conclude that class notice does not satisfy the requirements of the Mineral Code as to unnamed members of the class.

## II.

In summary, we conclude that notice given by counsel for a lessor on behalf of a putative class does not satisfy the requirements of Articles 137-141 of the Louisiana Mineral Code, which require the lessor to give written notice of the lessee's failure to make timely or proper payment of royalties as a prerequisite to a judicial demand for damages or dissolution of the lease. Permitting class notice, particularly in a case such as this, upsets the careful balance established by Mineral Code Articles 137 - 141 between providing an incentive to lessees to promptly pay royalties, yet giving the lessee a reasonable way to avoid the harsh remedy of lease cancellation. Accordingly, we affirm the district court's denial of class certification on this basis. Because class certification was properly denied, we need not consider whether the district court erred in holding that a Louisiana school board does not have the legal capacity to act as a class representative. AFFIRMED.

8