### CHEVRON USA, INC.

v.

### VERMILLION PARISH SCHOOL BOARD

**Texaco, Inc., et al**

v.

**Vermillion Parish School Board**

**Amerada Hess Corp.**

v.

**Vermillion Parish School Board**

**Union Oil Co. of California**

v.

**Vermillion Parish School Board**

**Mobil Oil Corp., et al**

v.

**Vermillion Parish School Board**

**Exxon Mobil Corp.**

v.

**Guidry**

**Exxon Mobil Corp.**

v.

**Vermilion Parish School Board**

Civil Action Nos. 00–0279, 00–0280, 00–0281, 00–0282, 00–0295, 00–0296, 00–0297.

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Jan. 29, 2001.

John M. Wilson, Cheryl M. Kornick, Jonathan A. Hunter, Liskow & Lewis, New Orleans, LA, for Chevron USA, Inc.

Joe B. Norman, Stevia M. Walther, Endya E. Delpit, Liskow & Lewis, New Orleans, LA, David R Dugas, Jeffrey M Baudier, Caffery Oubre et al, Lafayette, LA, for Texaco, Inc.

Lawrence P. Simon, Jr., Charles B. Griffis, Liskow & Lewis, Lafayette, LA, for Amerada Hess Corp.

Howell A. Dennis, Jr., Strain Dennis et al, Lafayette, LA, William Seay Strain, Thomas C. McKowen, IV, Strain Dennis et al, Baton Rouge, LA, Gerri M. Fore, Exxon Co U S A, Houston, TX, for Exxon Mobil Corp.

Bob Forrest Wright, Domengeaux Wright et al, Lafayette, LA, Calvin E. Woodruff, Jr., Abbeville, Jules B. LeBlanc, III, Charles S. Lambert, Jr., LeBlanc Maples & Waddell, Baton Rouge, LA, Spencer Hosie, John B. McArthur, Hosie Frost et al, San Francisco, CA, William F. Large, Hosie Frost et al, Anchorage, AK, Michael V. Ardoin, Robert K. Hammack, Lafayette, for School Board Vermilion Parish, Marshall W. Guidry.

## MEMORANDUM RULING

MELANCON, District Judge.

Before the Court are Cross Motions For Partial Summary Judgment, filed by plaintiffs Chevron USA, Inc. [doc. no. 22]; Texaco, Inc. [doc. no. 22]; Amerada Hess Corporation [doc. no. 23]; Union Oil Company of California [doc. no. 23]; Mobil Oil Corporation [doc. no. 39]; and, Exxon Mobil Corporation [doc. no. 28] (hereinafter collectively referred to as "the Oil Companies") and the Vermilion Parish School Board [doc. no. 25]; [doc. no. 27]; [doc. no. 28]; [doc. no. 27]; [doc. no. 43]; and [doc. no. 34], respectively, as well as Cross Motions For Partial Summary Judgment filed by plaintiff Exxon Mobil Corporation [doc. no. 26] and Marshall W. Guidry [doc. no. 32] (the Vermilion Parish School Board and Marshall W. Guidry will hereinafter be referred to as "the Royalty Owners"). As the central issues in each of the foregoing motions are identical, the Court will address all of the motions in this ruling.[1] For the reasons that follow, the Oil Companies' motions will be granted and the Royalty Owners' motions will be denied.

### I. Background

By individual letters, the Royalty Owners made demands upon the Oil Companies pursuant to the Louisiana Mineral Code, on behalf of the Royalty Owners and "all similarly situated royalty owners" for additional royalties on natural gas liquids which they alleged the Oil Companies had underpaid pursuant to mineral leases executed by the Royalty Owners and the Oil Companies (the "Liquids Demand"). By individual letters, the Oil Companies responded to the Liquids Demand. *(Id. at ¶ 4)*. Subsequently, by individual letters, the Royalty Owners made demands upon the Oil Companies pursuant to the Louisiana Mineral Code, on behalf of the Royalty Owners and "all similarly situated royalty owners" for additional royalties on dry natural gas which they alleged the Oil Companies had underpaid pursuant to mineral leases executed by the Royalty Owners and the Oil Companies (the "Dry Gas Demand"). The Oil Companies responded to the Dry Gas Demand by individual letters. The Oil Companies filed the instant actions for declaratory judgment pursuant to Title 28 of the United States Code section 2201, *et seq.* based on the Liquids Demand, and amended their complaints to include the Dry Gas Demand. The Royalty Owners filed answers to the Oil Companies' complaints and amended complaints as well as counterclaims against the Oil Companies on behalf of the Royalty Owners individually and as representative of a class of all others similarity situated on the "Liquids Demand" and the "Dry Gas Demand."

### II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed.*

1. These cases were consolidated by the Court's December 7, 2000 Order. *(R. 41)*.

*R.Civ.P. 56.* Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. *Id.* Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Analysis

The issues before the Court are (1) whether the demand letters submitted by the Royalty Owners pursuant to the Louisiana Mineral Code constitute the required written notice for a class of complainants, the "putative class" and (2) whether the contents of the demand letters were adequate or sufficient to put the Oil Companies on notice of the claims of the Royalty Owners individually, as well as the putative class. The parties agree that these issues present no questions of fact, but rather are legal issues which are appropriate for determination by summary judgment at this stage of the proceedings.

### A. The Notice Requirement of the Louisiana Mineral Code

The Oil Companies contend that because Louisiana Revised Statute 31:137 requires individual lessors to make an individual demand in the lessor's individual name, the use of a "class action" demand letter is insufficient to satisfy the requirements of 31:137.[2] The Oil Companies further contend that, to the extent that the rules governing class actions permit such an interpretation, they are in conflict with the Mineral Code. The Oil Companies assert, therefore, that the demand letters sent to the Oil Companies by the Royalty Owners individually and as representative of a class of similarly situated royalty owners, purporting to make demand for the underpayment of liquid gas and dry gas royalties on production in Louisiana were not an adequate pre-litigation demand as to the unnamed class members.

"The applicable law as to notice and demand is set forth in the Louisiana Mineral Code. Louisiana Revised Statute 31:137 et seq. establishes the procedure to be followed by a mineral lessor seeking the proper payment of royalties. Article 137 provides that, '[i]f a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease.' When the written notice has been given, the provisions of article 138 become applicable. This provision affords the mineral lessee thirty (30) days after receipt of the required notice within which to pay the royalties due or to respond, in writing, by stating a reasonable cause for non-payment. Under article 139, if the lessee pays the royalties demanded within thirty (30) days after receipt of the lessor's written notice, the remedy of dissolution becomes unavailable to the lessor, unless the lessee fraudulently withheld payment. Under article 140, if the lessee fails to pay

2. The Oil Companies cite *Bollinger v. Texas Co.,* 232 La. 637, 95 So.2d 132 (1957) and *Melançon v. Texas Co.,* 230 La. 593, 89 So.2d 135 (1956) in support of their representation that "[b]efore the adoption of the Louisiana Mineral Code, Louisiana law permitted a mineral lessor to file suit on a royalty claim found to be an active breach of the lease without first making written demand upon the lessee and the result was described a 'one of the most, if not the most confused and unsatisfactory areas of Louisiana mineral law.' " *Plaintiffs' memoranda citing* LSA–R.S. 31:137, Comment.

royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the notice, the court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, regardless of the cause for the original failure to pay royalties. The court may, in its discretion, dissolve the lease." *Lewis v. Texaco Exploration and Production Co., Inc.*, 698 So.2d 1001, 1008 (La.App. 1 Cir. 1997).

■ "The Official Comment to 31:137 [3] states '[i]t is the intent of [Mineral Code] Articles 137 [through] 141 to provide lessors with a meaningful remedy while simultaneously giving operators who have made substantial investments in producing properties the security of title which the nature and size of their investment deserves.' These provisions provide lessors with some meaningful remedy, besides recovery of interest, to assure timely payment of the production royalties, and are balanced with the harshness of lease cancellation, which may involve the investment of millions of dollars. The Comment further notes that 31:137 does not intend that this notice be a demand for performance, as in the case of the traditional default under the Louisiana Civil Code, since the lessor may not desire performance. Rather, the device of notice is merely to inform the lessee he has not paid royalties deemed by the lessor to be due. The total effect of the articles is to provide an impetus to timely payment of royalties due, while giving lessees a reasonable way in which to avoid the harsh remedy of cancellation. It also affords the lessee an opportunity to evaluate a non-payment situation and to make a decision regarding whether the royalties allegedly due should be paid." *Id.* at 1009.

"This statutory scheme evidences a legislative determination that a mineral lessor does not have a right of action to judicially complain of the failure of his lessee to make timely or proper payments of royalties until he gives written notice of such failure to his lessee and allows the lessee thirty (30) days after receipt of the required notice to either pay the royalties due or state the reasonable cause for non-payment. The notice requirements set forth in LSA–R.S. 31:137 are an indispensable prerequisite to a judicial demand for dissolution of the lease or damages. The 30 day notice period requirement affords the lessee an opportunity to evaluate the nonpayment problem and then to make an informed decision as to whether the accrued royalties should be paid." *Rivers v. Sun Exploration and Production Co.*, 559 So.2d 963, 969 (La.App. 2nd Cir.1990) (citations omitted). "[T]he intent of the Mineral Code is that the notice be of a more specific nature so as to reasonably alert the lessee and to allow for an appropriate investigation of the problem by the lessee." *Rivers*, 559 So.2d at 969. The written notice should be such that it gives "the lessee reasonable notice of a problem or deficiency with the payment of royalties and the opportunity to correct it." *Id.*

The Oil Companies assert that it is inherently unreasonable to subject a lessee to a class wide demand purportedly issued on behalf of "several thousand" unnamed royalty owners as in the cases at bar. The Oil Companies contend that such demand would require them as lessees, within a thirty day period, to investigate the specifics of every lease and every liquids processing and gas sale arrangement that they have ever undertaken in Louisiana in order to determine whether each and every royalty interest owner, even though having made no demand, has been satisfactorily paid pursuant to the lessee's royalty obligation under every lease. The Oil Companies cite the language in article 137, "[H]e must give his lessee written notice...", in maintaining that the reason-

---

**3.** The official comments do not constitute part of the law, but provide some aid in interpreting legislative intent. *State on Behalf of Jones v. Mallet*, 704 So.2d 958, 960 (La.App. 3 Cir. 1997).

ably specific notice must be given by an individual lessor, in his or her individual name, through individual demand.

### B. Whether class notice is available under the Mineral Code

The parties do not dispute that in this case the Court is to apply the substantive law of Louisiana, nor that the Mineral Code and the aforementioned articles apply. Rather, the parties are in dispute as to the application of the Louisiana jurisprudence applying the article 137 notice requirement. The Oil Companies contend that *Willis v. Franklin,* 420 So.2d 1243 (La.App. 3d Cir.1982) supports their position in this case. The Royalty Owners argue that *Willis* stands for the "unremarkable propositions that verbal demand does not constitute 'written notice' as required by article 137 and thirty days must elapse following written demand as a prerequisite to filing suit." *(Defendants' opposition memoranda).* In *Willis,* the court rejected the argument asserted by the plaintiff in his appeal that the oral and written demands of his co-lessor should serve as the required notice for the plaintiff under article 137. The court held that "the 'written notice' requirement of Article 137 is clear and unambiguous" and because the plaintiff himself did not give the lessee the "written notice" required by LSA–R.S. 31:137, the plaintiff's suit was premature for lack of 30 days notice. *Id.* at 1245.

The Oil Companies cite *Stoute v. Wagner & Brown,* 637 So.2d 1199 (La.App. 1st Cir.1994) and *Lewis v. Texaco Exploration and Production Co., Inc.,* 698 So.2d 1001 (La.App. 1st Cir.1997) as composing the sole jurisprudence in which article 137 notice in a class action has been addressed. The Oil Companies contend that while *Stoute* is in line with article 137 and strictly adheres to its terms, *Lewis* is arguably incorrect and is distinguishable from the instant case. In *Stoute,* the trial court denied class certification in an action

brought by royalty owners on their own behalf and on behalf of all similarly situated persons in a single Louisiana producing field. The trial court ruled that any class could consist only of those royalty owners who had timely made individual written demand upon the lease. While the appellate court did not address the propriety of a class wide demand, the Oil Companies contend that the court "adopted the [trial] court's opinion as its own" and represent that the case supports its position that the Royalty Owners cannot maintain a class action where none of the absent putative class members has satisfied article 137's demand requirement. The issue on appeal in *Stoute* was the trial court's denial of the motion to certify the matter as a class action. In affirming the trial court's finding on the issue of certification of a class action, the court stated,

> "because of the many different contracts involved ..., there are many different rights, remedies and defenses which are likewise involved. The [trial] court concluded that it would not be more efficient to try these disputes in a class action.
>
> After reviewing the record, we cannot say the trial court committed manifest error in its holding. On the contrary, we are convinced that the reasons enunciated by the [trial] court are correct and we affirm, adopting the trial court's opinion as our own...."

*Stoute,* 637 So.2d at 1199.

In *Lewis v. Texaco Exploration and Production Co., Inc.,* 698 So.2d 1001 (La. App. 1st Cir.1997), the plaintiffs made demand on behalf of "all royalty owners in the Hollywood Field as a class, with respect to royalties owed by [Texaco] under certain mineral leases ... covering mineral interests in the Hollywood Field, Terrebonne Parish, Louisiana." *Lewis,* 698 so.2d at 1010. The court, a different panel of the same court that had previously decided *Stoute* [4], held that article 137 allows

---

4. As noted by the Oil Companies, Judge Parro was also a member of the panel in *Stoute* but

a mineral lessor to give notice, as a potential class representative, on behalf of absent members of a proposed class action. The court stated,

"The Mineral Code does not contain any specific guidelines as to the precise requirements of the formal written demand set forth in 31:137, but requires only that the lessor 'give his lessee written notice of such failure' to make timely and proper payment of royalties. Nowhere in the statute is there a requirement that a notice be given by each and every mineral lessor individually. The use of the word 'he' in 31:137 is not indicative of any legislative intent that each individual lessor provide such notice. The use of the masculine term is equally applicable to the feminine, and the use of the singular is likewise applicable to the plural. *LSA–R.S. 1:7 and 8.* Nor has the jurisprudence established any specific requirements for the sufficiency of that notice."

*Lewis* at 1009.

In addition to citing *Lewis* in support of their position, the Royalty Owners contend that their position is further supported by *Duhe, et al v. Texaco, Inc., et al.,* Parish of Iberia, 16th Judicial District Court, "D", No. 86–848 c/w No. 88707. In *Duhe,* six proposed class representatives made written demand on Texaco on behalf of four statewide classes of persons who owned royalty interests in hydrocarbon production from all fields located in Louisiana whose royalty was calculated and/or paid by Texaco. Texaco filed an exception of prematurity arguing that the class notice letter was not effective under article 137. The court denied Texaco's exception of prematurity and the Third Circuit denied Texaco's writ application. *(R 28, Exh. C; D).*

The Oil Companies assert that the *Lewis* court erred in its analysis when it placed the burden on the lessee to prove that it had been harmed by the individual royalty owners' failure to make the required demand, instead of reviewing the class wide demand letter to see if it strictly adhered to the requirements of article 137. While the Oil Companies assert that such a case-by-case analysis performed in *Lewis* removes the certainty of the notice requirement that the Mineral Code was intended to provide the lessee, they maintain that if the Court were to apply the case-by-case analysis of *Lewis,* the demand letters *sub judice* would be deemed ineffective under article 137.

 In a diversity case such as this, "[i]n ascertaining the law of the forum state, a federal court 'is bound to apply the law as interpreted by the state's highest court.'" *Texas Department of Housing & Community Affairs v. Verex Assurance,* 68 F.3d 922, 928 (5th Cir.1995) *citing Ladue v. Chevron U.S.A., Inc.,* 920 F.2d 272, 274 (5th Cir.1991). When the state supreme court has not yet adjudicated the issue, as is the situation with the issue at bar, the court's "task is to determine, to the best of [its] ability, how that court would rule if the issue were before it." *Ladue,* 920 F.2d at 274. "When making an 'Erie-guess' as to how a state's high court would decide an issue, it is proper to look to the decisions of lower state courts." *Shanks v. Alliedsignal, Inc.,* 169 F.3d 988 (5th Cir.1999). While the intermediate state appellate court decisions clearly serve as guidelines, and "should be given some weight, ... they are not controlling." *Rogers v. Corrosion Products, Inc.,* 42 F.3d 292, 295 (5th Cir.1995). Thus, in this case the Court must consider all authority relevant to what it concludes the Louisiana Supreme Court would look to in order to decide the issue at bar.

 The Court finds that by its own terms, "[H]e must give his lessee written notice", the notice required by article 137 must be individualized. When a law is clear and unambiguous and its application

dissented in the 2–1 *Lewis* decision on the grounds that article 137 requires that notice

be given by each mineral lessor. *Lewis,* 698 So.2d at 1016 (Parro, J., dissenting).

does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9. The Royalty Owners' Demand Letters are legally insufficient to serve as written notice on behalf of unnamed royalty owners under article 137 of the Louisiana Mineral Code, and therefore, class action relief is unavailable under such circumstances.

This Court is of the opinion that the Louisiana Court of Appeal for the First Circuit was correct in the *Stoute* case in its interpretation of the notice requirement of article 137 of the Louisiana Mineral Code rather than the position that the same court took in the *Lewis* case. As set out in *Willis*, the written notice requirement of article 137 is clear and unambiguous and a suit brought before giving a lessee the requisite individual written notice is premature. Even if this Court had considered the Louisiana First Circuit Court of Appeal's holding in *Lewis* to be a correct application of article 137, the case at bar is distinguishable from the facts of that case. First, the demands in *Lewis* affected royalty owners in only one field which was specifically identified as the "Hollywood Field [ ] located in Terrebonne Parish, Louisiana, and includes within its boundaries the City of Houma." *Lewis*, 698 So.2d at 1005. In the instant situation the Liquids and Dry Gas Demands purport to make claims on behalf of "all royalty and overriding royalty owners to whom you pay gas royalties in Louisiana." In other words, in every gas producing field owned by each the Royalty Owners in the entire state of Louisiana. Second, the *Lewis* class included only those "persons who, as of November 1, 1987, held a royalty interest in any Hollywood Field mineral lease." *Id.* at 1006. Here, the Liquids and Dry Gas Demands include everyone who has ever owned a royalty or overriding royalty interest in any of the Royalty Owners' leases in Louisiana, "A royalty owner of [Liquids and Dry Gas] to whom

you are presently or have in the past been obligated to pay royalties under an oil and gas lease, and on behalf of all other royalty owners in leases in Louisiana to whom you directly or indirectly pay, have paid, or should pay [Liquids and Dry Gas] royalties." Third, in *Lewis*, the plaintiffs made a claim to royalties under a single take-or-pay settlement agreement. *Id.* at 1006–07. The Royalty Owners' demand in this case claims that the Oil Companies received a higher price for gas than the price used to pay royalties ("market value claim"), and would require the Oil Companies to address every gas sale agreement and royalty price in the state of Louisiana for an unlimited time period. Finally, in the *Lewis* case the demands did not cover multiple claims, but only addressed the royalties on gas sold under a limited number of contracts. *Id.* In the Liquid Demands at bar, the Royalty Owners allege that in calculating royalties the Oil Companies failed to use the "reasonable, and actual costs of processing [Liquids]", requiring the Oil Companies to address the processing charges and actual cost of processing at every processing plant in Louisiana in which that the Oil Companies has ever processed gas. Contrary to the *Lewis* court's determination that the notice "fully and completely notified of the demands of the named the Oil Companies, as well as the intention of those named the Oil Companies to demand royalty payments on behalf of all of the [ ] royalty owners", the Royalty Owners' demand letters extend far beyond the defined parameters of the single-field, single-settlement demand in *Lewis*. Accordingly, the Royalty Owners' demand letters fail to meet the sufficient notice interpretation of article 137 as set out by the *Lewis* court.

*Conclusion*

Because Louisiana's highest court has not yet adjudicated the issue which is before the Court in the case at bar, it is this Court's task to determine "to the best of its ability" how the Louisiana Supreme Court would rule if the issue were before

it. In making its "Erie-guess" the Court has considered the existing Louisiana jurisprudence concerning article 137 notice as set out above. This Court is of the firm conviction that the Louisiana Court of Appeal for the Third Circuit in *Willis* and the Louisiana Court of Appeal for the First Circuit in *Stoute* correctly interpreted the clear and unambiguous language of article 137 of the Louisiana Mineral Code. This Court believes that were the issue before the Louisiana Supreme Court, that Court would find the demand letters sent to the Oil Companies by the Royalty Owners did not constitute the required notice for the putative class and the contents of the letters did not give the Oil Companies sufficient notice of the nature of the claims of the putative class.

This is an important issue that could have far reaching effects not only on the parties before the Court but for potentially thousands of people across this state and beyond, as well as the oil and gas industry in Louisiana and beyond. The Court therefore expressly determines that there is no just reason for delay and will certify this ruling as a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure for appeal to the United States Court of Appeals for the Fifth Circuit in order for that court to certify the issues raised herein to the Louisiana Supreme Court or for the Circuit Court to otherwise dispose of the issues as it deems appropriate.

### JUDGMENT

In accordance with the Memorandum Ruling issued on this date,

IT IS ORDERED that the Motions for Partial Summary Judgment, filed by Chevron USA, Inc., CA00–0279 [doc. no. 22]; Texaco, Inc., CA00–0280 [doc. no. 22]; Amerada Hess Corporation, CA00–0281 [doc. no. 23]; Union Oil Company of California, CA00–0282 [doc. no. 23]; Mobil Oil Corporation, CA00–0295 [doc. no. 39]; and, Exxon Mobil Corporation, CA00–0297 [doc. no. 28] against Vermillion Parish School Board are GRANTED and the Motions for Partial Summary Judgment filed by Vermillion Parish School Board, CA00–0279 [doc. no. 25]; CA00–0280 [doc. no. 27]; CA00–0281 [doc. no. 28]; CA00–0282 [doc. no. 27]; CA00–0295 [doc. no. 43]; and CA00–0297 [doc. no. 34] are DENIED.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment, filed by Exxon Mobil Corporation, CA00–0296 [doc. no. 26] against Marshall W. Guidry is GRANTED and the Motion for Partial Summary Judgment, filed by Marshall W. Guidry [doc. no. 32] is DENIED.

IT IS FURTHER ORDERED THAT the Court certifies this ruling as a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and directs the entry of such judgment under the express determination that there is no just cause for delay.