United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 24, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

—————————————————

No. 03-30602

—————————————————

CHEVRON USA, INC.

Plaintiff - Counter Defendant - Appellee

v.

VERMILION PARISH SCHOOL BOARD

Defendant - Counter Claimant - Appellant

—————————————————

TEXACO INC; TEXACO EXPLORATION & PRODUCTION, INC.

Plaintiffs - Counter Defendants - Appellees

v.

VERMILION PARISH SCHOOL BOARD

Defendant - Counter Claimant - Appellant

—————————————————

AMERADA HESS CORP.

Plaintiff - Counter Defendant - Appellee

v.

VERMILION PARISH SCHOOL BOARD

Defendant - Counter Claimant - Appellant

—————————————————

UNION OIL COMPANY OF CALIFORNIA

Plaintiff - Counter Defendant - Appellee

v.

VERMILION PARISH SCHOOL BOARD

Defendant - Counter Claimant - Appellant

—————————————————

MOBIL OIL CORP; MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST, INC.

Plaintiff - Counter Defendant - Appellees

v.

VERMILION PARISH SCHOOL BOARD
Defendant - Counter Claimant - Appellant

_____

EXXON MOBIL CORP.
Plaintiff - Counter Defendant - Appellee

v.

MARSHALL W. GUIDRY
Defendant - Counter Claimant - Appellant

_____

EXXON MOBIL CORP.
Plaintiff - Counter Defendant - Appellee

v.

VERMILION PARISH SCHOOL BOARD
Defendant - Counter Claimant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana, Lafayette and Opelousas Division

Before DAVIS, BARKSDALE and PRADO, Circuit Judges.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF LOUISIANA, PURSUANT TO RULE XII OF THE RULES OF THE SUPREME COURT OF LOUISIANA.

TO THE SUPREME COURT OF LOUISIANA AND THE HONORABLE JUSTICES

THEREOF:

## I. STYLE OF THE CASE

The style of the cases in which certification is made is Chevron U.S.A., Inc., Plaintiff - Counter Defendant - Appellee, versus Vermilion Parish School Board, Defendant - Counter Claimant - Appellant; Texaco, Inc.; Texaco Exploration & Production, Inc., Plaintiffs - Counter Defendants - Appellees, versus Vermilion Parish School Board, Defendant - Counter Claimant - Appellant; Amerada Hess Corp., Plaintiff - Counter Defendant - Appellee, versus Vermilion Parish School Board, Defendant - Counter Claimant - Appellant; Union Oil Company of California, Plaintiff - Counter Defendant - Appellee, versus Vermilion Parish School Board, Defendant - Counter Claimant - Appellant; Mobil Oil Corp.; Mobil Oil Exploration & Producing Southeast, Inc., Plaintiff - Counter Defendant - Appellee, versus Vermilion Parish School Board, Defendant - Counter Claimant - Appellant; Exxon Mobil Corp., Plaintiff - Counter Defendant - Appellee, versus Marshall W. Guidry, Defendant - Counter Claimant - Appellant; and Exxon Mobil Corp., Plaintiff - Counter Defendant - Appellee, versus Vermilion Parish School Board, Defendant - Counter Claimant - Appellant. This case involves a determinative question of state law; federal jurisdiction is based solely on diversity of citizenship.

## II. STATEMENT OF THE CASE

### A. Background

In 1999, counsel for the Vermilion Parish School Board and counsel for Marshall W. Guidry (the "Royalty Owners") sent individual demand letters to Chevron USA, Inc., Texaco, Inc., Amerada Hess Corporation, Union Oil Company of California, Mobil Oil Corporation, and Exxon Mobil Corporation (the "Oil Companies") pursuant to Mineral Code Article 137. La. R.S. 31:137. The

3

letters stated that they were sent on behalf of the Royalty Owners and "all similarly situated royalty owners - all royalty and overriding royalty owners to whom you pay gas royalties in Louisiana." Both letters demanded payment of unpaid royalties due on natural gas liquids ( "NGLs") the Oil Companies allegedly underpaid as a result of using a "lease/plant split instead of the reasonable and actual costs of processing NGLs" and for "liquids that you pulled out of the gas stream and did not use to compute royalties at all."

In 2000, counsel for the Royalty Owners again sent individual demand letters to the Oil Companies. Like the first letters, counsel stated that they were writing on behalf of the Royalty Owners and "all similarly situated royalty owners - all royalty and overriding royalty owners to whom you pay dry gas royalties on production in Louisiana." The letters demanded payment of underpaid dry gas royalties as a result of the Oil Companies computing royalties "using prices that understated the price actually available in true arms length sales." After each Oil Company responded to the demand letters, each filed a separate declaratory judgment action in federal court seeking a determination that it had no liability to the Royalty Owners. The Royalty Owners filed answers and also a counterclaim "individually and as representatives of a class of all others similarly situated" against each of the Oil Companies complaining of underpayment of royalties on NGLs and dry gas production. All cases were consolidated.

The putative class as defined would include all royalty and overriding royalty interest owners in all Louisiana mineral leases owned by the Oil Companies whose royalties have been computed using either of the two methods challenged by the Royalty Owners. The Royalty Owners concede that the class would number in the thousands.

The parties filed Cross Motions for Partial Summary Judgment on the issue of whether the

4

demand letters written by counsel for the individual Royalty Owners to the Oil Companies satisfied the requirements of Louisiana's Mineral Code for members of the putative class. The district court held that the demand letters were "legally insufficient to serve as written notice on behalf of unnamed royalty owners under Article 137 of the Louisiana Mineral Code." Chevron USA, Inc. v. Vermilion Parish School Bd., 128 F.Supp.2d 961, 968 (W.D. La. 2001). The district court based its decision first on the plain language of Article 137 which provides: ". . . if a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease." The court found that "by its own terms, 'He must give his lessee written notice', the notice required by Article 137 must be individualized." 128 F. Supp.2d 961, 967 (W.D. La. 2001). The court explained that under the statutory scheme, after the Article 137 demand has been made, the lessee has 30 days to either pay the royalties due or respond in writing and state a reasonable cause for non-payment. La. Mineral Code Art. 138; La.R.S. 31:138. Only if the lessee fails to pay or provide a reasonable explanation for its failure to pay, does the dissolution of the lease become a possible remedy. Relying on the official comment to Articles 137-141, the court stated: "The device of notice is merely to inform the lessee he has not paid royalties deemed by the lessor to be due. The total effect of the articles is to provide an impetus to timely payment of royalties due, while giving lessees a reasonable way in which to avoid the harsh remedy of cancellation. It also affords the lessee an opportunity to evaluate a non-payment situation and to make a decision regarding whether the royalties allegedly due should be paid."

After reviewing the case law from the intermediate Louisiana Courts of Appeals, the district court concluded that the decision of the Louisiana First Circuit Court of Appeals in Stoute v. Wagner

5

& Brown, 637 So.2d 1199 (La. App. 1 Cir. 1994), was correct in its interpretation of Article 137, and distinguished another case from the Louisiana First Circuit, Lewis v. Texaco Exploration and Production Co., Inc., 698 So.2d 1001 (La.App. 1 Cir. 1997).

The Royalty Owners appealed. This court dismissed the appeal for lack of jurisdiction because "the district court made no ruling that was binding on the appellants individually . . . it merely ruled that the letters were insufficient as to claims on behalf of a putative class (royalty owners not named in the letters) that did not include the appellants." Chevron USA, Inc. v. Vermilion Parish School Bd., 294 F.3d 716, 719-20 (5th Cir. 2002).

On remand, the Royalty Owners filed requests for discovery to which the Oil Companies objected. The Oil Companies filed a Motion to Deny Class Certification and for Partial Summary Judgment seeking dismissal of the class claims. The district court granted the motions to deny class certification on the basis of its 2001 "ruling that the demand letters were not effective under Article 137 as to the putative class and the members of the putative class have no right of action under Article 137." Because the district court denied class certification, it did not rule on the motion for partial summary judgment. The royalty owners then lodged this appeal.

**B.     Relevant Caselaw**

The issue presented is whether the notice given in this case by counsel for a lessor on behalf of a class of similarly situated royalty owners satisfies the requirements of Louisiana Mineral Code Articles 137 to 141, requiring the lessor to give written notice of a lessee's failure to make timely or proper payment of royalties as a prerequisite to judicial demand for damages or dissolution of the lease. No decisions of the Louisiana Supreme Court directly address this question. Decisions of Louisiana Appellate Courts are conflicting.

6

In Stoute v. Wagner & Brown, 637 So.2d 1199 (La. App. 1 Cir. 1994), plaintiff mineral lessors and royalty owners in the Moore-Sams Field in Pointe Coupee Parish sued the defendant production companies on their own behalf and on behalf of all similarly situated persons to obtain payment of royalties improperly withheld. The issue before the court was whether the class should be certified. The trial court decided preliminarily that "only those royalty owners who have written a demand for past royalties may sue their gas producers." 637 So.2d at 1201. The Louisiana First Circuit affirmed the district court's denial of class certification because of lack of commonality (many different contracts involved raising many different rights, remedies and defenses) and because it would not be more efficient to try the case as a class action (36% of the interests had filed suit separately). Although the Stoute case did not expressly consider whether a class demand letter satisfies Article 137, it broadly approved the trial court's opinion. "We are convinced that the reasons enunciated by the [trial] court are correct and we affirm, adopting the trial court's opinion as our own."

In Lewis v. Texaco Exploration and Production Co., Inc., 698 So.2d 1001 (La. App. 1 Cir. 1997), a divided panel addressed the issue more directly. In Lewis, plaintiff mineral lessors in the Hollywood Field in Terrebonne Parish sought to certify a class for their action for royalties due on take or pay settlements from the defendants. Five representative claimants had sent demand letters pursuant to Article 137 on behalf of all Hollywood Field royalty owners. Defendant Texaco objected on the basis that the Mineral Code did not allow class demand letters. Addressing whether the class demand letter was sufficient to satisfy the requirements of Article 137, the panel majority stated:

> The Mineral Code does not contain any specific guidelines as to the precise requirements of the formal written demand set forth in LSA-R.S. 31:137, but requires only that the lessor "give his lessee written notice of such failure" to make timely and proper payment of royalties. . . . Nowhere in the statute is there a requirement that a notice be given by each and every mineral lessor individually. The use of the word

7

> "he" in LSA-R.S. 31:137 is not indicative of any legislative intent that each individual lessor provide such notice. The use of the masculine term is equally applicable to the feminine, and the use of the singular is likewise applicable to the plural. LSA-R.S. 1:7 and 8.

698 So.2d at 1009 (internal citations omitted). Judge Parro, in his dissent stated: "This statute [Art. 137] is clear and unambiguous. It requires that each lessor give written notice to his lessee based on the individual contractual relationship between the lessor and lessee. It does not authorize one lessor to give notice on behalf of another unidentified or named lessor."

In Duhe v. Texaco, Inc., 779 So.2d 1070 (La. App. 3 Cir. 2001), the Louisiana Third Circuit accepted the Lewis panel majority's analysis. In Duhe, the royalty owners claimed underpayment of oil royalties by Texaco and its producing affiliate TEPI by valuing the amounts due the royalty owners on self-dealing, low-priced transfers of their oil from TEPI to another Texaco subsidiary, rather than at market value. The class consisted of approximately 7,000 oil and condensate royalty owners in the State of Louisiana. As to the defendants' assignment of error, that notice was inadequate under Article 137, the court relied on the analysis in Lewis. The court stated that nothing in the statute requires that notice be given by each mineral lessor individually. Rather, it is "sufficient if the notice fully and completely notifies the lessee of the demands of the named plaintiffs, as well as the intention of those named plaintiffs to demand royalty payments on behalf of a class of royalty owners." Id. at 1087.

Because the issue of the propriety of class notice under Article 137 of the Louisiana Mineral Code is clearly a matter of Louisiana law and because there are conflicting rulings on this point by the Louisiana Courts of Appeal with no ruling by the Louisiana Supreme Court, we hereby invoke the certification privilege granted by Rule XII of the Louisiana Supreme Court Rules.

8

## III. QUESTION CERTIFIED

We certify the following question to the Louisiana Supreme Court:

Whether the notice given in this case by counsel for a lessor on behalf of the putative class satisfies the requirement of Articles 137-141 of the Louisiana Mineral Code, requiring the lessor to give written notice of the lessee's failure to make timely or proper payment of royalties as a prerequisite to a judicial demand for damages or dissolution of the lease.

## IV.  CONCLUSION

We disclaim any intent that the Louisiana Supreme Court confine its reply to the precise form or scope of the legal question we certify.  The answer provided by the Louisiana Supreme Court will determine a dispositive issue in this case.  We transfer to the Louisiana Supreme Court the record and appellate briefs in this case with our certification.

We CERTIFY the question stated to the Louisiana Supreme Court.